# United States Court of Appeals for the Federal Circuit

2007-1186

STEVE STUMBO,

Plaintiff-Appellant,

v.

EASTMAN OUTDOORS, INC.,

Defendant-Appellee.

-------------------------------------------------------------------------------

2007-1205

STEVE STUMBO,

Plaintiff-Appellant,

v.

AMERISTEP CORPORATION,

Defendant-Appellee.

Erik G. Fischer, Fischer & Fischer, LLP, of Fort Collins, Colorado, for plaintiff-appellant.

Barbara L. Mandell, Dykema Gossett PLLC, of Bloomfield Hills, Michigan, for defendant-appellee, Eastman Outdoors, Inc. With her on the brief was John P. Guenther.

Marshall G. MacFarlane, Young Basile, of Ann Arbor, Michigan, for defendant-appellee, Amerstep Corporation.

Appealed from: United States District Court for the District of Colorado

Senior Judge Richard P. Matsch

# United States Court of Appeals for the Federal Circuit

2007-1186

STEVE STUMBO,

Plaintiff-Appellant,

v.

EASTMAN OUTDOORS, INC.,

Defendant-Appellee.

-------------------------------------------------------------------------------------

2007-1205

STEVE STUMBO,

Plaintiff-Appellant,

v.

AMERISTEP CORPORATION,

Defendant-Appellee.

_____

DECIDED:  November 28, 2007

_____

Before SCHALL, BRYSON, and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

Steve Stumbo appeals the decisions of the United States District Court for the District of Colorado granting summary judgment of noninfringement in favor of Eastman Outdoors, Inc. and Ameristep Corporation (collectively, Defendants).  We affirm the judgments of the district court.

BACKGROUND

Steve Stumbo, the plaintiff-appellant, brought suit against Eastman Outdoors and Ameristep for alleged infringement of United States Patent No. 5,628,338 (the '338 patent). Stumbo's invention involves a portable and collapsible hunting shelter or blind that allows quick and easy set-up by hunters, photographers, and other wildlife enthusiasts. The hub-style blind has four walls and a top made of fabric that is stretched taut by five foldable support members when fully assembled. Central to this case, the '338 patent claims a "closable vertical opening" at a side edge or vertical corner through which one can enter and exit the blind. Figure 1 of the '338 patent illustrates this opening:



The Defendants' accused products also involve portable and collapsible hub-style blinds. However, one enters and exits the Eastman Outdoors accused product through a triangular-shaped "loose door flap" by unzipping a zipper diagonally northeast from the bottom of and into the center of one of the side walls, then diagonally northwest to the top of one of the side walls. Similarly, one enters and exits Ameristep's

accused products through a triangular-shaped door opening created when a first zipper is unzipped from an upper corner of a side wall to the center of the wall, and a second zipper is unzipped from a lower corner of the side wall to the center of the wall, as



shown below:

The Defendants moved for summary judgment as to all of Stumbo's claims, arguing that their products do not infringe the '338 patent, either literally or under the doctrine of equivalents. Construing the term "closable vertical opening" as a "slit-like opening that runs straight up and down or perpendicular to the plane of the horizon," the district court concluded that no genuine issue of material fact existed as to whether the accused products literally infringed the '338 patent given that they had triangular openings. The district court also concluded that no genuine issue of material fact existed as to whether the accused products infringed under the doctrine of equivalents because their triangular openings did not operate in substantially the same way to create substantially the same result as the '338 patent's vertical slit. Moreover, the district court held that Stumbo could not claim triangular openings under the doctrine of equivalents because the '338 patent would then cover the prior art. Stumbo v. Ameristep, Corp., No. 05-CV-00663, 2007 WL 219961, at *7 (D. Colo. Jan. 25, 2007); Stumbo v. Eastman Outdoors, Inc., No. 05-CV-00664, 2007 WL 219957, at *6 (D. Colo.

Jan. 25, 2007) (citing Wilson Sporting Goods Co. v. David Geoffrey & Assocs., 904 F.2d 677, 684 (Fed. Cir. 1990) ("[S]ince prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim.")). Finally, the district court determined that Stumbo could not claim triangular openings under the doctrine of equivalents because doing so would vitiate the claim element of the "vertical opening." Id. (citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997). Thus, summary judgment of noninfringement was granted in favor of the Defendants. Stumbo timely appealed. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review the district court's grant of summary judgment of noninfringement de novo. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Determining whether a claim has been infringed requires a two-step analysis. Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." Id.

I

Claim construction is a question of law that we review de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). The only claim term at issue in this case is the term "a closable vertical opening," which is a limitation in all nine claims of the '338 patent. Claims 2-6 depend on claim 1, which contains the limitation, "a closable vertical opening along one of said side edges." Claims 8-9 depend on claim 7, which contains the limitation, "a closable vertical opening along one

vertical corner of said structure." We agree with the district court that the term "a closable vertical opening" is properly construed as "a slit-like opening that runs straight up and down or perpendicular to the plane of the horizon." See, e.g., Ameristep, 2007 WL 219961, at *5.

When construing claims, a court must begin by "look[ing] to the words of the claims themselves . . . to define the scope of the patented invention." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Words of a claim "are generally given their ordinary and customary meaning" as understood by a person of ordinary skill in the art in question. Id. at 1312-13. For this reason, "claims must be read in view of the specification, of which they are a part." Id. at 1315 (internal quotations omitted). Hence, the specification "is the single best guide to the meaning of a disputed term." Id. "In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims." CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1231 (Fed. Cir. 2005) (citing Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1326 (Fed. Cir. 2002)).

The district court concluded, based on expert testimony that Stumbo does not dispute on appeal, that the phrase "closable vertical opening" does not have any special meaning in the hunting blind industry. See, e.g., Ameristep, 2007 WL 219961, at *3. Stumbo does not contest the common sense meaning of "vertical," defined as "perpendicular to the plane of the horizon or to a primary axis." Merriam-Webster's Collegiate Dictionary (10th ed. 1998). Rather, Stumbo contends that the district court misapplied the word "vertical" to the slit-like shape of the opening in the blind instead of

to its orientation. In other words, according to Stumbo, the word "vertical" limits the opening only to shapes that are taller than wide. Under Stumbo's definition, a "vertical opening" would cover any shape of opening—i.e., rectangular, oval, or triangular—as long as the vertical height of the opening was greater than the horizontal width. The claims of the '338 patent read in light of the specification do not support such assertions.

Starting with the text of the claims, the phrases "along one of said side edges" in claim 1 and "along one vertical corner of said structure" in claim 7 are used to describe the word "opening" separately and in addition to the word "vertical." Therefore, construing the word "vertical" as referring to merely the orientation of the opening would render the phrases "along one of said side edges" and "along one vertical corner of said structure" superfluous, a methodology of claim construction that this court has denounced. Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); see also Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1307 (Fed. Cir. 2005). Only if "vertical" refers to the shape of the opening instead of redundantly to the orientation of the opening would each claim term have a distinct meaning.

That the word "vertical" refers to the slit-like shape of the opening is further supported by the specification of the '338 patent. The written description explicitly states that:

> [a] zipper is incorporated in one corner of the structure where two side
> walls meet. . . . The leg members <u>must</u> flex in order to enable the door

opening to expand for ingress and egress. When the zipper is in an open position, the fabric adjacent to the opening can be pulled slightly away from the opening (which results in widening of the opening as the pegs flex).

'338 Patent col.3 ll.29-36 (emphasis added). The fact that the leg members <u>must</u> flex to enable entry and exit indicates that the opening in the '338 patent is a slit. Triangular loose door flaps, such as the openings in the accused products, certainly would not require leg members to flex.

In support of his construction, Stumbo points to the summary of the invention, which reads "an openable doorway is positioned vertically at one corner of the blind or shelter to enable ingress and egress." <u>Id.</u> col.2 ll.13-15. This sentence does not support Stumbo's proposed construction. An entry and exit pathway positioned along the side edges or vertical corners of a cube-shaped blind will necessarily be vertically positioned.

Stumbo also relies on <u>CCS Fitness, Inc. v. Brunswick Corp.</u>, 288 F.3d 1359 (Fed. Cir. 2002), to argue that the district court improperly imported a limitation from the specification into the claims. <u>CCS Fitness</u> involved the construction of the claim term "reciprocating members," used to describe the longitudinal structures that facilitate the reciprocating elliptical motion of the footpads on a stationary exercise device commonly known as the elliptical trainer. Though the district court noted that nothing in the claims, specification, or prosecution history of the patent indicated what shape these structures had to take, it reasoned that the figures of the claimed invention illustrated the reciprocating members as single-component straight bars only and restricted the claim term as such. <u>Id.</u> at 1364. On review, we determined that the district court had erred. The drawings merely illustrated a particular embodiment, as the specification never

required a certain number of components or shape for the reciprocating members. Id. at 1367. Because nothing in the intrinsic evidence narrowed the sub-structures encompassed under "reciprocating members," we concluded that the claim term covered all possible configurations, including a multi-component, curved beam or lever. Id.

By contrast, the specification of the '338 patent inherently requires a slit-like shape for the opening. The specification explicitly discloses that the "legs must flex in order to enable the door opening to expand for ingress and egress." '338 Patent col.3 ll.31-36. The fabric adjacent to the opening is then pulled slightly away from the opening, which results in a widening of the opening. Id. A linear slit is the only fathomable shape of an opening with the described characteristics. Figure 1, the only figure of an opening in the '338 patent, illustrates a vertical slit-like opening, further supporting this construction. Id. fig.1. There is nothing in the specification to suggest that the patentee contemplated that any other shape of opening could work with this invention.

In sum, the district court correctly interpreted the claims in the context of the claim language and the specification.

II

Stumbo does not dispute that the accused products do not have vertical slit-like openings. Thus, there is no factual dispute—the accused products do not literally infringe the '338 patent. Stumbo nonetheless argues that the district court erred in holding no infringement under the doctrine of equivalents on summary judgment.

A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950). One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product. See Warner-Jenkinson, 520 U.S. at 39-40. The function-way-result test is particularly suitable for analyzing the equivalence of mechanical devices, such as the ones at issue here. Id. at 39.

On appeal, Stumbo has failed to raise any genuine issues of material fact as to whether the triangular door flap of Eastman Outdoors' accused product operates in substantially the same way with substantially the same result as the slit-like opening of the '338 patent. Eastman Outdoors offers the declaration of its chief engineer, which describes the manner in which one enters and exits Eastman Outdoors' accused product as involving a triangular opening with a single zipper that extends "diagonally northeast from the bottom of and into the center of one of the side walls, then diagonally northwest, to the top of one of the side walls." The unzipping creates a loose door flap that, when held to the side, creates a large triangular opening, allowing one to "freely and easily enter or exit the blind." The Chief Engineer also submitted photographs that show that there is no need for the legs to flex in order to enter or exit.

In comparison, as the Chief Engineer noted, the specification of the '338 patent details a vertical zipper such that "the leg members must flex in order to enable the door opening to expand for ingress and egress." '338 Patent col.3 ll.31-33. In this way, the

fabric adjacent to the opening "can be pulled slightly away from the opening (which results in widening of the opening as the pegs flex)." Id. col.3 ll.34-36.

As for differing results, the Chief Engineer asserted that Eastman Outdoors' accused product, by virtue of the wider access created by its triangular door flap, is safer than a linear slit-like opening for use by gun and equipment toting hunters. The Chief Engineer attached product guides for Eastman Outdoors' accused product that further demonstrate "a hunter easily exiting the blind with equipment on his shoulder and in his hand."

In response, Stumbo merely asserts that Eastman Outdoors' argument that its triangular flap makes it easier or safer to enter its blind is "not relevant," because "[n]one of the claims of the patent discuss or identify any issues relative to safety." We have indeed held in prior cases that the function-way-result test focuses on "an examination of the claim and the explanation of it found in the written description of the patent." AquaTex Indus., Inc. v. Techniche Solutions, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (quoting Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc., 141 F.3d 1084, 1090 (Fed. Cir. 1998)). But this, of course, does not mean that discussion of the equivalence of the function, way, or result between a claimed invention and an accused product is irrelevant when the claims and specification of a patent are silent on the subject. When the claims and specification of a patent are silent as to the result of a claim limitation, as they are in the '338 patent, we should turn to the ordinarily skilled artisan. For example, where as in this case, it is the opening of the accused device that the evidence suggests is more advantageous in that it is easier and safer when used by hunters, the patent would naturally be silent on this point. It does not mean that the failure of the

patent to mention safety or ease of use makes this evidence irrelevant to the analysis under the doctrine of equivalence.[1]

In this case, Eastman Outdoors has offered, through the declaration of its chief engineer, that a person ordinarily skilled in the art would conclude that the vertical slit opening of the '338 patent and the triangular opening of the Eastman Outdoors accused products substantially differ in way and result.[2] Stumbo, on the other hand, has not produced a single shred of particularized evidence as to how the vertical opening of the '338 patent creates substantially the same result. The only evidence proffered by Stumbo is the declaration of its engineering expert, Rex Paulsen, which stated generally that the openings in the Eastman Outdoors accused product and the '338 patent are "substantially equivalent," but never stated with any specificity how the openings are substantially the same in way and result vis-à-vis safety.

Likewise, Stumbo has failed to raise any genuine issues of material fact as to whether the triangular door flap of Ameristep's accused products operate in substantially the same way with substantially the same result as the slit-like opening of the '338 patent. As the president of Ameristep described in his affidavit, the triangular door flaps of Ameristep's products may be opened by unzipping two zippers "without having to flex or distort the legs of the sub-frame assemblies." Ameristep's president

---

[1]    Seldom does a patent tout the advantages of alternative (non-patented) ways of doing something. In fact, if the element under scrutiny is a later developed equivalent, the patent would almost certainly be silent on the differing results.

[2]    We do not consider the Chief Engineer's assertion with regard to Stumbo's commercial embodiment, the Double Bull blind. See Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co., 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc) ("Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product . . . with a commercialized embodiment of the patentee.").

stated that, unlike the self-closing opening of the '338 patent, the triangular flap of fabric may be rolled up, leaving a triangular door opening in the fabric wall panel. In response, Stumbo offered the declaration of its engineering expert that stated in conclusory fashion that the ways the two different openings operated were not "significantly different." However, the declaration did not explain how either opening operated or how the differences were insubstantial. We have repeatedly held that such cursory conclusions will not withstand summary judgment. See Tex. Instruments, Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1567 (Fed. Cir. 1996) ("[A] patentee must . . . provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents."); PC Connector Solutions, LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005) ("The same applies in the summary judgment context."); Motionless Keyboard Co. v. Microsoft Corp., 486 F.3d 1376, 1382-83 (Fed. Cir. 2007); AquaTex, 479 F.3d at 1324.

## CONCLUSION

Having failed to produce any evidence to the contrary, Stumbo has not raised a genuine issue of material fact as to infringement under the doctrine of equivalents by either Eastman Outdoors' or Ameristep's accused products. Given this holding, we need not reach the issues of practicing the prior art or claim element vitiation. The district court's grant of summary judgment of noninfringement is

AFFIRMED.

2007-1186, -1205                                    12